Science Department how to support a patient and VA officer to do their part to help them I am Daniel Meier. I represent the appellants, cross-appellees, who are Hammond Surgical Hospital and Hammond Surgical Hospital Management. I will refer to them throughout this argument as we have in briefs as Cypress Point. The entities are a building and a management group that operate essentially as one and for purposes of the District Court's judgment and for purposes of the trial they were treated as one entity. The hospital that they operate on the North is called Cypress Point. So I will refer to them again as Cypress Point. The case before you, your honor, is a copyright infringement dispute that proceeded to trial in which a judgment was rendered. We have appealed on a number of bases but I think I'm going to focus and spend most of the time on what I believe is our strongest argument which relates to the award of statutory damages and attorney's fees under this context. Now, very few points of detail to add a little color to this case. The plaintiff, who is Southern Credentialing, prior to leaving her contractual employment relationship with Cypress Point, intended or displayed, as far as the evidence shows, no intent to assert or claim any copyright to a set of paperwork or a set of forms, credentialing applications and privileging forms, which were used in connection with credentialing and privileging physicians at Cypress Point. What we believe the record shows is that this was an after-the-fact gotcha where the forms were used for an extended period of time at Cypress Point and a registration was done months or even years after the plaintiff and the appellee left her employee with Cypress Point, in which case, under the strict application of the law and under this Court's previous holdings, there is no availability of statutory damages. And the reason for that is a purely legal issue. This is strictly de novo. There is very little information in the record that is required or even needs to be reviewed in order to, I think, adequately handle this case and reverse it and correctly apply the law. The operative facts are when the documents themselves were published. For purposes of the judgment and this appeal, we will accept what is on the applications, which is that they were published in September and November of 2010. That's date number one. Number two is when the infringements commenced. The infringements, according to the judgment, commenced in May 2013 when the relationship, the employment relationship between the parties, Cypress Point and Southern Credentialing, was terminated. Now a set of documents were in use. They had been in use for years. They were the only set of documents approved for use, which everybody in this case knew, the appellees and the appellants, that these documents were in use and approved for use for, by the way, one specific hospital, not a set of documents that can be used at multiple hospitals because they are customized for one hospital and were used at one hospital, Cypress Point. Now these documents commenced or continued to be used after Southern Credentialing left Cypress Point, which was May of 2013. The registration was not made for roughly nine months to twelve months afterwards because there are technically two documents that we're dealing with, the application packet and a reapplication packet, which were registered at different times, one in February of 2014, one in July of 2014. Now for purposes of Section 412, which is the bar of statutory damages in this case, if a document is not registered, a work is not registered within three months of the date it's first published, then a violation or an infringing use, which takes place before or commences before the registration, is not in context for any infringement whatsoever. This has been the law of the land in this circuit for 27 years. It was decided by this court in the Mason v. Montgomery case in 1992. Now what's interesting is the district court acknowledges that and they apply Section 412 to preclude statutory damages and attorney's fees for all infringing uses in this case from 2010, the publishing date, all the way up until 2017. Now mind you, this is a lawsuit filed in 2015. So two years into the lawsuit is the first time that any damages are awarded or the first infringing use that any damages are awarded. And as the court is likely familiar, this is the... What was the difference in terms of the forms? Was it that the so-called first infringement was on a site that was password protected and then after that it was just loaded onto this site without password protection? I'm just trying to figure out the facts of what's the distinction between the two infringements as seen by the district court. I know you disagree with that. It's interesting because the district court doesn't actually do any analysis on what is different. What they simply say is that there is a difference in kind based on the way that it was handled before and the way that it was handled afterwards. Now what actually happened and what the evidence in the record shows is that the difference is you really, really have to squint to see any difference whatsoever. In the first case, from 2000, let's call it August of 2011 when the forms were approved by the Medical Executive Committee, any applicant would send some sort of feeler out to the hospital which would be handled by the credentialing or HR department which would then be responded to with two things, an application and a set of attachment forms. If you are a cardiologist, you would get an attachment form that had a cardiology delineation and a set of basically paperwork that you have to sign that says this is a copy of my medical signature, this is an attestation that I read the bylaws, et cetera, et cetera. What changed is that after 2017, instead of those documents being emailed, they would receive a letter that said this is the way to access those forms. You go to this website and by the way, once you access the website and this has been briefed at length because this is very important, it is very cumbersome and very difficult to locate the forms itself. It is not as if there was an ad taken out in the front page of the New York Times that said come find these documents which by the way can be used at one hospital for one purpose. The plaintiff who is the appellee in this case admitted at trial that the only persons who would ever be interested in accessing these forms online would be persons who were applying for privileges or credentialing at Cypress Point. That is the exact same context as they would have been used before. The only difference whatsoever is the manner of which a set of what we call the privileging forms, not to be confused with the application, because the application was never used after the termination of the employment relationship. The privileging forms would be transmitted instead of by email, they would receive a letter that says access them yourself on this website. So anybody can send in a letter or a contact to Cypress Point and then receive a copy of those forms because there is no preliminary verification of are you a physician, you just get a contact from somebody that says I'm looking to apply for privileges and then they get that document. So the differences are microscopic and they focus on the mechanics of which those two things were transmitted. Now this is a very, very important issue when it comes to the policy concerns and the potential unintended consequences of this ruling if it is allowed to preserve because we're talking about two specific types of incorporation of information in a digital context. This court's ruling on this case is going to have applications on copyright. Texas, Louisiana, Mississippi, it's going to be widely referred to by courts and circuits around the country. I know you don't think, you don't buy into the district court's different in kind exception to the statutory, the bar on statutory damages if the infringement starts before registration. What about, let's say if 10 years after this case, nothing happens for 10 years and then your client started copying these same documents, would they be entitled to statutory damages with that separation in time? It's conceivable because there is a totally separate application which is not incorporated or used by the district court in this case called the Continuing Infringement Doctrine which is a vestige of the 1909 Act. It really, frankly, has no place in the 1976 Copyright Act which is exactly what this court found in 1992 when it rendered the opinion on the Mason case where it said, a plaintiff may not recover an award of statutory damages and attorney's fees for infringements that commenced after registration if the same defendant commits an infringement of the same work prior to registration. Now the difference could be you could certainly receive actual damages. You could do what has been done in this case where you have a permanent injunction which carries its own set of penalties if you violate a permanent injunction. So there are a number of ways that this can be dealt with or that this problem can be resolved or that there can be some sort of protection for a copyright holder short of reading an exception into 412 that has been rejected by every single court in the entire United States that has ever evaluated this. So even with the gap in time, you'd still say a bar on statute. I understand there's obviously actual damages available if you can prove it. I can see a different case where there is a gap in time where a continuing infringement could be considered to be legally different. Now because no court in this entire country has ever found a different in-kind exception related to a separate violation of Section 106, are you distributing the documents? Are you publishing or reproducing the documents? Because no court has ever found that, there has never been an articulated standard of what that would be. For example, the Derrick Andrew Court in the Ninth Circuit conducted an actual evaluation of whether something is different in kind. We've addressed why we think that there's an error on that. But what's interesting is that they never mention a violation of a different subsection of 106. What I think the courts mean when they say a different aspect or a different copyright itself, a different work, because many works are different or comparable, there are infinite amounts of paperwork in the country. There are so many different types and iterations of documents, each one of which could theoretically fall under the compilation copyright, which is a thin, limited copyright, and could theoretically be available for statutory damages if there was, in each different iteration or use, if this judgment would be able to be held up or to be withheld. But to answer your question, Your Honor, I wouldn't have an intellectual problem with an endorsement of a continuing infringement existence. I think, for example, the Rosen case, which is out of the Western District of California, which is cited extensively both at the trial court and in the appellant's brief, is an interesting case where there was a five-year gap between any publication or any use, and the district court said because there was a five-year gap, that allows us to say that there is a difference in kind. No mention whatsoever about a violation of a different subsection of 106. It's that gap that's the significant and operative fact. And I think that gap does allow some protection to the plaintiffs that could come in the future and offer some sort of a remedy for them. But in this case, none whatsoever exists, and I think the policy concerns and the specific facts of this case lend themselves very well to exposing why this is a smart decision, why this was an appropriate law to pass when it was passed. And I think these specifics are laid out in the Qualie case, which was decided by Judge Fallon in the district court in 1996, specifically analyzing the Mason case, this court's opinion in Mason. In that case, the specific argument that's being advanced by the plaintiff, which is, does a violation of a different subsection of 106, continuing, no issue there, does a violation of a different subsection of 106 serve to bar a violation of a separate section? It is the exact same subsections that are raised. In the first case in Qualie, it was a reproduction or a preparation, and post-registration infringements were distribution. Now, in that case, Judge Fallon said, the plaintiff would have the right to violate the same subsection, and he says, this cannot be the case, for as the Fifth Circuit's opinion in the Mason court explains, it would be inconsistent to read Section 504 to include all of the damages, statutory damages, for a set of defendant's infringements on a work, but have Section 412 only bar certain infringements. The ramifications of allowing that sort of exception to exist are present in this case alone. You have a situation where there is one violation that takes place at one time, which, oh, by the way, is two years after a lawsuit was filed and litigation commenced, and is there an availability for actual damages for violations that take place before the registration and statutory damages for a different in kind exception that, or infringement that takes place after. In those, in both of those circumstances, every court that has evaluated this has answered the question, no, there is no such exception. I'm running out of time. Thank you, Your Honors. Good morning. May it please the Court, Counsel, my name is Jesse Stewart. I'm Court-Appointed Counsel on behalf of the Plaintiff and Cross-Appellant Southern Credentialing Support Services, whose principals are here with us in the courtroom today, Debbie and Tony Caminito. Your Honors, the golden rule of copyright law is take not from others to such an extent and in such a manner that you would be resentful if they so took from you. That's from the Harper & Rowe Publishers case. It's at footnote three. This case is about just that. The defendants broke the golden rule, they broke it repeatedly, and they broke it with full knowledge that what they were doing was a violation of plaintiff's rights. You haven't appealed the failure to award actual damages. That is correct, Your Honor. We have only... If all the golden rule stuff, if you didn't suffer actual damages, then you have to comply with the statute to get statutory damages, and you have this problem that your client waited too long to register. We would suggest, Your Honor, that in this instance, we don't have that problem. We have conceded that the prior publications, I'm sorry, the prior use and creation of derivative works that occurred before January of 2017, which consisted, as this counsel stated, of one-off communications between the hospital and the providers, where they would request the documents and then, in a closed email chain, would receive the documents. That is an infringement that began almost immediately, as far as we can tell, after our independent contractor relationship ended in 2013. That infringement, we discovered it, as the records in the evidence show, because we obtained the actual email chains, and based on that, my clients obtained counsel, and they obtained the registrations. After obtaining those registrations, they sent defendants two notices that their actions were in violation of their copyrights. Defendants still did not stop using them. They filed a lawsuit alleging a willful infringement because defendants were now on notice, and they knew of the specific documents at issue, and we know that because the defendants responded with a letter dated September of the same year where they said, we've looked at the documents in our possession, which include all of the documents at issue here. We've determined that these are nothing but blank forms. You can't make that determination unless you know precisely the documents that we have at issue. So we filed a lawsuit. We survived a motion to dismiss, and in that motion to dismiss, it was laid out a side-by-side comparison. These are the documents that are protected by the registrations. These are the documents that we have seen on these one-on-one email circulations. After that, we served discovery. We exchanged Rule 26 initial disclosures, and those initial disclosures, they admitted that the documents at issue are the documents that are in their registration, their credentialing forms. Only after all of that transpired and the initial counsel, in this case, withdrew, did they post these online. And I would respectfully disagree with my colleague that this was a microscopic difference. This is an order of magnitude difference, because as we had before... What's the standard you would have us adopt for how different does different need to be to get around the bar on statutory damages? I think the standard is written right out in Section 106. Section 106 provides the exclusive rights. A violation of any one of those exclusive rights affords the plaintiff a copyright violation infringement. You have three rights that are at issue here. The first is to use. They were using them prior. The second is to create derivative works. That's exactly what they were doing before. They were not publishing, and that's the third. Why wasn't sending them to the doctors publishing them? Why wouldn't that have counted as public? They were emailing them the forms, right? Correct. And then they had to go on and load them up. Correct. Why wouldn't that be publishing and sending it? What's the difference between sending out by email and putting it out on the Internet? I think the difference, the common sense difference is, of course, if anybody could go to this competitor's website. And recall that these were published on the competitor's website. Anybody in the public could go to the competitor's website and access those. That's how our clients found them. So it might be broader distribution, but I don't see how one's distribution and one isn't. I would respectfully suggest to you that the one-on-one communications that were occurring were occurring at the behest of the doctors who were seeking privileges. So they would request, and in return, they would receive. I would suggest to you that a publication means more than that. A publication is making it available to a broader audience. And in this instance, you had them on a publicly available website, hosted by our direct competitors, alongside a letter on the same website that said that anybody who would like to receive privileges at our hospital needs to fill out these copyrighted documents. I didn't mention that they were copyrighted, but they need to fill out these copyrighted documents and submit them to us. So there is an invitation. How is that different than contacting them and sending them back? I mean, you don't really expect anybody other than the same people to be contacting the hospital. I mean, they want credentialing. It's just a question of how they make the contact to get the documents. You wouldn't expect it necessarily, but we can't know that. And that's what my client testified to at the trial. There's no way of knowing who accessed those documents. And the key to these documents is their originality, is the fact that what they have done is taken what can be a very cumbersome process of getting somebody credentialed, stripped them down to the exact essentials, and then if you follow the prompts that are required by these, you will be able to withstand any kind of review that's out there. The record evidence was that my client's record was impeccable in this space. She withstood audits, and it was because time and time and time and time again she sat in on these meetings where these audits were occurring, and that was the base of knowledge from which she created these documents that she then went and got protected by the Copyright Act. So, in this instance, they were put to use by the direct competitor. That was a benefit to them. They could have been obtained by any other direct competitor. Certainly SCSS, my client, knew of its direct competitors. There are other competitors in this space. They could have accessed these documents as well, and it would have been known in the community that these were documents that worked because she never failed an inspection. So, I think the other point that we want to make, and this is ... Has any court followed a different, other than the district court here, said that there's a different in kind infringement, which then gets outside from the bar? Yes. I think that you find that repeatedly, and interestingly enough, it started here in the Eastern District. I recognize that we're up at the Fifth Circuit right now, but it started right here with the Gieltbach case in 1992. That was the Judge Levade case. We have cited it. It made this distinction between statutory damages that are available if the infringement occurs after registration, and it infringes a different section of that Section 106. And respectfully, Your Honors, that is consistent with the purpose and the copyright act. The defendants have cited the Montgomery case. The Montgomery case looked at Section 504, and the specific issue before the court in Montgomery was, what does it mean to have commenced within the meaning of Section 504? And that was precisely the issue because in the earlier district court opinions, the district court made the fact finding that the infringement never changed. That's in the first district court opinion that was appealed up to the circuit. The specific type of infringement of the plaintiff's maps never changed from start to finish, so they didn't have to address this issue of different in kind. What they did have to figure out in this case was, what does it mean to commence within the meaning of Section 504? Because, of course, the plaintiff was arguing that, well, I can't obtain statutory damages for the discrete acts of infringement that occurred prior to registration, but after registration, I can obtain those because those are separate and discrete. The court said, no. Once you have a series of acts that are of the same kind, that will create the continuing infringement rule, and so that wipes out statutory damages forever. What we're asking you to interpret is the word infringement. That is the word that is the crux of this appeal. That is the crux of our argument under Section 104. We agree that their use and their making of derivative works began before we got registration. We do not agree, and they would concede, that their publication online occurred only after two years of this dispute going on, one year after a lawsuit was filed, eight months after losing a motion to dismiss, and five months after identifying the precise documents at issue in their Rule 26 disclosures. If you take their view, that infringement that began before wipes out all damages, that is actually a very expansive interpretation of that word infringement, because that would actually render superfluous the other rights that are available under Section 106. We are asking for a conservative interpretation of Section 412 to say that if the infringement that is complained of is of the same kind that began prior to registration, then yes, but if they start anew with a different kind of infringement, after registration, then it opens it back up again. And this is an accord ... How do you respond to their argument, and really Mason relied in large part on saying we have to read the bar on statutory damages consistent with 504, which allows for statutory damages, and that only allows for this one ... Each day of sending out a piece of paper isn't entitled to statutory damages. You look at the entire infringement. So how do you respond to the argument that that would sort of disrupt that congruity with the other statute? Respectfully, I think that that incongruency is actually satisfied by the requirement that you elect statutory damages. You have to elect in lieu of actual damages. At a certain point, the plaintiff has to say, I choose to get statutory damages rather than actual damages. But you would have to say 504 does mean you get a separate statutory award for each different type of infringement. If that type started after registration. But could you ... So here, could you get actual damages for the pre-registration derivative works, and also then statutory damages for the post-registration publication? No, Your Honor. We conceded from the outset that we can either pursue actual damages, or we can pursue statutory damages. Had this post ... Ex-post publication not occurred, we would be in full agreement with the other side that we would not be able to pursue the statutory damages. But because it did occur, and it occurred after the lawsuit had been filed, and it occurred after they had been put on notice of the infringement, and it occurred after counsel had identified the specific documents at issue, that opens up the door. And that goes right in ... But I think conceptually, if you're saying it's a definition of infringement, and this is a different infringement, I think that's what Judge Fallin said in the case they relied on. He said, if that argument worked, then you would be able to get actual damages for the pre-registration infringements, and statutory damages for post-registration, which is not how it's generally viewed as working. I think the concern that was motivating Judge Fallin in the Qualey case, which, as far as I can tell, is the only case that has addressed this specifically, and arrived at the conclusion that you cannot get to statutory damages, I think his concern was precisely that. And what I am suggesting to you today is that that same concern is addressed by the election. If you have to elect, then you cannot have an instance where you get actual damages for infringements that occur or begin before registration, and you get statutory damages for something that happens later. Well, you don't get to elect, because you can't get actual damages prior to registration. I don't understand what you're trying to elect. I would say election occurs when the plaintiff has to make the statement to the court that in this instance, we are pursuing statutory damages or we are pursuing actual damages. But you can't pursue actual damages. We could pursue actual damages for the infringements that occurred after registration. We just could not pursue statutory damages for the same type of infringements that began before registration. And, Your Honor, I think this naturally kind of segues into our willfulness argument. The District Court's willfulness decision, which is the only thing that we have taken up on appeal, was based on two findings. The first finding was that this online publication, which is the only basis of our statutory damages, was made at the advice of counsel. There's simply no record evidence to support that determination. What the record actually shows is that way back in 2014, when we warned them that they were violating our copyrights, they went to their counsel, they got an opinion, they determined that it was absurd, and then they made the decision to keep on using these documents. And they wrote us back. And they said, we've looked at the documents we have in our possession, we've determined that they're blank forms, and please also show us the precise arrangements that make these original. That indicates that they knew full well the scope of this dispute. The second prong of the District Court's willfulness ruling is this idea that they didn't know full well what documents were at issue. But you can't look at that September 2014 correspondence and say to yourself that they didn't understand that. Because they're raising the same defenses that they would raise time and time and time again, including in their motion to dismiss, which we responded to with an invitation to look at these documents side by side. See the documents that we've attached as exhibits to our opposition. These are actual emails out in circulation. They show the documents that we made that are at issue here. And then it said, these are the documents that appear in the copyrighted registrations. If you look at those two things together, you're performing the exact same analysis that the District Court performed when it determined whether copying was made. These are verbatim copies of our protected works. We say at the case that shows that in this instance where you both have actual knowledge, in this instance from the letter written by the chief of the board of the hospital back to us saying that these are nothing but blank forms to constructive knowledge, which encompasses counsel's correspondences, counsel's responses to the briefs. There is evidence here of willfulness. And I would direct the Court's attention specifically to the second. Most of the cases you cite say are cases where a district court granted summary judgment for the defendant saying no evidence of willfulness. The Court of Appeals reverses and says no, a jury or the fact finder could find willfulness. Here, you have a trial and the judge . . . I think you just said there's evidence of willfulness. Well, okay, there is some evidence to support willfulness, but the district judge as the fact finder wasn't persuaded. You have to show that as a matter of law there was willfulness, right, which is a much higher burden than these cases just saying there's a fact issue on willfulness. Well, we have to show that there was clear error in the district court's determination. And I would direct the Court's attention to the NAS import case out of the Second Circuit because it was precisely this circumstance that was presented. In NAS, you had aggravated factors very similar to ours. You had knockoffs that were very identical to the plaintiff's copyrighted works. You had multiple cease and desist letters that were disregarded. And finally, you had a counseled response to a demand letter. And in that instance, the district court made a similar determination. There was not willfulness, but nonetheless awarded statutory damages. It went up on appeal to the Second Circuit, and the Second Circuit reversed. And in particular, they said the lawyer's letter was an evidentiary basis from which the inference was inescapable that the defendant had constructive knowledge that its actions constituted copyright infringement. Keep in mind, this willfulness, it's a recklessness standard. It doesn't have to be actual knowledge. But if they disregard a known risk that their acts are violating our rights, then we have established recklessness. And in NAS, the remedy was to vacate the ruling as it related to willfulness, to determine that it was a willful infringement, and to return to the district court in order to make a determination whether that statutory damages award should include a punitive and deterrent element, which is exactly what we are asking for here. Your Honors, the defendants have raised additional issues. They have again attacked whether our copyrights are or I'm sorry, that our registered works are subject to copyright protection because they lack originality. They've also disputed whether the online publication constitutes copying. I see that my time is running low. I will simply rest on the briefs as it relates to those arguments unless the court has any additional questions about them. Thank you, Counsel. Thank you. Your Honors, I'll try and work backwards from where the appellee left off. Let's start with the willfulness determination. In order for this court to reverse the district court's finding of willfulness, it is conceded by the appellee that this is a clear error standard. This is a finding of fact that was rendered based on an 8,000-page record, a two-day trial, the district court judge having the opportunity to personally evaluate and question each witness. I think the problem with the willfulness can be resolved at a much simpler and shallower level because, quite frankly, this is a distinction without a difference. If the court were to reverse the willfulness opinion and leave every aspect of the district court's judgment in its own stasis and affirm every other aspect of it, nothing would change in the outcome because the adequacy of the statutory damage award is not appealed. The finding of no actual damages is not appealed. The denial of statutory damages for all infringements from 2013 to 2017 is not appealed. Only the fact finding with regard to whether or not these actions are willful is appealed. If it was willful, it still resulted in no actual damages. If it was willful, there is still the district court's opinion that 2,500 per work is a sufficient award. But, frankly, I think this all comes back to the real issue at hand, which is underneath all of this, which is what was copyrighted is a compilation, and a compilation, as this court has articulated, is a thin copyright, meaning the only thing available that is copyrighted is the selection, coordination, and arrangement of facts. Now, within the facts that are copyrighted, you have a two-page document that has the bylaws attestation, which is drawn directly from our corporation's bylaws. You have a statement of immunity or release of liability, which is another two-page document, also cribbed directly from our bylaws. Those documents themselves, along with many other documents, the delineation pages, the TB acknowledgment, the medical record signature, are all duplicates or modifications or alterations, however subtly or otherwise, of some document that is used in some other aspect in this industry. Paperwork in the credentialing industry changes hands constantly, and that's what the evidence in this case shows. So that thin copyright only protects what is original to the compiler, which is the selection and coordination of that paperwork. So the fact that they have our bylaws and we have our bylaws doesn't mean we're copying their bylaws. It means they took our bylaws and put it in their packet and then went and copyrighted that packet, which is what happened in this case. Now, the district court found technically that there is a copyright in this case. We've appealed that issue, but I do think it's appropriate to rest on the briefs because we've more or less moved on from that. Touching on some of the counterarguments that were made by the appellee with regard to the availability of statutory damages, I heard two cases referenced, one of which was the GEO case. And what I think is important to raise is, and Judge Costa, I think you asked a question about this, the ruling that Judge Libidaw made in the GEO vote case states, and I quote, the court is reluctant to dismiss the plaintiff's claim for statutory damages and attorney's fees at this time. Although the defendants may have the better of the argument, and they continue with the conclusion, I think that is very, very thin precedent to hold what would be a monumental change in the law because the underlying Mason opinion, the district court opinion from the South District of Texas, which this court reviewed in 1992 and reversed, had before it the specific language of whether there was a new or separate basis for a different and kind exception to something that takes place after infringement. And this court evaluated the legislative history. It evaluated the house reporter notes. It evaluated the statutory purpose that has come from many different sources, all of which relate to a central policy aim of giving plaintiffs this extra tool in their toolbox, which, by the way, contains the ultimate weapon for any plaintiffs, which is attorney's fees. So this powerful weapon is given to those who play by the rules, and it is not given to those who do not play by the rules. There's no prejudice against them. They can still get an award of actual damages for anything that takes place after registration. However, where there is no timely registration, that means that within the three-month grace period, which is the only exception provided by Section 412, if you do not register within three months of publication, you are not entitled to statutory damages for any continuing infringements that take place pre- and post-registration. Okay. Counsel, we can't argue that. Thank you. Thank you, Your Honor.